## WHITEHEAD v. WICKER.    (No. 2593.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 27, 1926. Rehearing Denied Feb. 24, 1926.)

1. **Limitation of actions �kø36(3)—Holder of note held not entitled to plead limitations against maker, suing to cancel obligation on theory of payment.**

In action whose gist was cancellation of plaintiff's note to defendant and redemption of note pledged as collateral, and in which plaintiff alleged payment, holder was not entitled to set up limitation against claim for conversion of cotton which plaintiff claimed should be credited on note.

2. **Limitation of actions �kø40(1)—As general rule, statutes of limitation held not applicable to strict defenses including pleas of payment.**

As general rule, statutes of limitation are not applicable to strict defenses, and do not apply to pleas of payment whether made with money, personal property, or services.

3. **Payment �kø36—Equity will require unapplied or misapplied payments to be properly credited as of date of payment.**

If payments have been made which creditor has not applied, or has misapplied, equity will require them to be properly credited as of date of payment.

4. **Limitation of actions ⊞⊃36(2)—Pledges ⊞⊃ 46—Pledgee is trustee for excess of proceeds of collection; action against pledgee of note as collateral security and bailee of mortgaged property held governed by 4-year statute of limitations (Rev. St. 1925, art. 5529).**

Pledge of note as collateral security with payee of another note, and delivery of cotton, mortgaged to secure notes, into his warehouse, constituted him trustee of property and of proceeds of sale in excess of principal note, and action by maker against him as trustee is governed by 4-year statute of limitations (Rev. St. 1925, art. 5529), where his only adverse claim to such property was after he had purchased it less than 18 months before action was instituted.

---

⊞⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Limitation of actions ⬤⇒127(2)—Amended petition, by changing dates and amounts, and adding another item of payment to original petition, held not to set up new cause of action.**

Where, by amended petition, some corrections were made in dates and amounts in original petition, and another item of payment on note was added, but cause of action and relief sought was same, no new cause of action was set up.

**6. Pledges ⬤⇒53—Pledgee of note secured by mortgage on crops held not entitled to recover expense of picking and ginning cotton against pledgor.**

Where mortgage securing pledged note authorized mortgagee to take possession of crops and sell them, and apply proceeds to mortgage debt whenever mortgagee deemed himself insecure, on failure of mortgagor to pick and gin cotton, pledgee was not entitled to recover expenses incurred from pledgor.

**7. Limitation of actions ⬤⇒41—Limitations ran against claim for expenditures in caring for mortgaged crop from time they were made.**

Counterclaim for expense of picking and ginning mortgaged cotton on mortgagor's failure to pick and gin it was barred by limitation 4 years after expenditures were made.

**8. Pledges ⬤⇒51—Finding of jury that rents due landlord were not to be deducted from proceeds of mortgaged crop applied on pledged note held supported by evidence.**

In action by maker to cancel note, and redeem note pledged as collateral security in which plaintiff claimed that payment partly by proceeds of crop mortgaged to secure collateral note, evidence that landlord's share of such crops had been paid *held* sufficient to support jury's finding that rent was not to be deducted.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by W. T. Wicker against A. E. Whitehead and another, in which an accounting was asked, and in which defendant Whitehead brought a cross-action. Judgment for plaintiff, and said defendant appeals. Affirmed.

Bishop, Starnes & Matney, of Lubbock, for appellant.

R. A. Baldwin, of Slaton, for appellee.

HALL, C. J. On October 19, 1923, Wicker filed his original petition in the district court of Lubbock county, alleging, in substance, that on August 1, 1920, the defendant Smith executed and delivered to him a promissory note for $1,250 which was secured by a chattel mortgage on certain crops sold by plaintiff to Smith; that on August 18, 1920, plaintiff executed and delivered to A. E. Whitehead his promissory note for $1,000, due November 15, 1920, and secured by a chattel mortgage on crops; that plaintiff forthwith filed the mortgage given him by Smith for registration on August 6, 1920; that on August 10, 1920, the defendant Smith made some sort of a deal with the defendant Whitehead, whereby the former executed and delivered to the latter his promissory note for $610, secured by a chattel mortgage on the identical crops described in the chattel mortgage which Smith had prior to that time made to plaintiff; that Whitehead filed his mortgage for registration August 11, 1920; that plaintiff delivered to Whitehead the said note for $1,250 which he had obtained from Smith as collateral security for the $1,000 note which plaintiff had made to Whitehead, it being agreed that Whitehead should hold the $1,250 note as collateral security until the $1,000 note was paid; that thereafter, from November 11, 1920, to January 12, 1921, Smith harvested and sold a part of the crop which he had mortgaged to plaintiff and paid the proceeds thereof to defendant Whitehead to be credited on the $1,250 note which Smith gave to Wicker; that said payments aggregated $255.38, which sums belonged to plaintiff and were paid to appellant only because he held the said note for $1,250 as collateral security; that said sums should have been credited on both of said notes held by Whitehead, but that Whitehead wrongfully credited the amounts so paid on the aforesaid $610 note; that plaintiff harvested and sold crops from November 12, 1920, to February 8, 1921, realizing from such sales the sum of $260.92, which he paid to Whitehead, and which, together with the payments made by Smith, amounted to $506.30, which should have been credited on said $1,000 note; that plaintiff Whitehead and Smith agreed that the cotton mortgaged by Smith to plaintiff, and by plaintiff to Whitehead, should be gathered and ginned and the bales stored in Whitehead's warehouse without storage charges; that it should be sold by Whitehead and the proceeds of Smith's cotton applied to both the $1,250 and the $1,000 notes and the proceeds from Wicker's cotton applied to the $1,000 note only; that in pursuance of this agreement Smith stored in Whitehead's warehouse 11 bales of cotton, and Wicker stored 7 bales, all of which Whitehead sold in July, 1921, at $18.16 per hundred pounds; that Whitehead applied this money to the payment of said $610 note, though plaintiff's mortgage on said crop was a prior and superior lien to the mortgage which Smith had given to Whitehead; that, because of a mistake in measuring the acreage of the crops which Wicker sold to Smith, an agreed correction in the sum of $250 was made in favor of Smith, and said amount credited on said $1,250 note, leaving the net principal of that note $1,000; that by reason of the aforesaid transaction plaintiff's said note for $1,000 was paid, and should have been canceled if payments had been properly applied by White-

head; that he was entitled to the return of both of said notes to him, together with any moneys received by Whitehead in excess of the amount necessary to discharge his $1,000 with principal and interest.

The plaintiff prayed for an accounting; for a correct application of the payments; for judgment against Whitehead for any balance due him; and for judgment against Smith for whatever sum might be owing on the $1,250 note. On May 26, 1925, plaintiff amended his original petition, setting up the same facts in the amendment, except that he corrected the date of the sale by Whitehead of the cotton, alleging that the sale was made May 4, 1922, instead of in the month of July, 1921, as alleged in the original petition, and the further correction that Whitehead sold the cotton for $16.60 per hundred pounds instead of $18.16, as previously alleged. He charged a further payment to Whitehead from the sale of crops in the sum of $162.69 from November 1, 1922, and abandoned his claim for $500 attorney's fees as set out in the original petition. He set out the items of account showing that Whitehead was indebted to him May 4, 1922, in the sum of $808.35, and interest, and that Smith owed him a balance of $196.96, with interest.

On May 29, 1925, Whitehead filed his first amended original answer, interposing by exception the statute of limitations of 2 years, specially excepted to the amended petition as setting up a new cause of action, and pleaded specially, in substance that appellee agreed that said $610 note and the mortgage securing it should be a prior lien to that securing the $1,250 note; that, out of the feed delivered by Smith to him, he had paid the landlord the rent, leaving a balance of only $163.59 to the credit of Smith. He alleged that he did not sell Smith's cotton, but that Smith sold it, and he purchased it at public auction for the sum of $6 per hundred pounds; that all of such cotton was picked and ginned at his expense, after Smith and the plaintiff had refused to pick the same, and that the $6 per hundred realized at the sale was not sufficient to pay the expenses of picking and ginning; that, on the sale of the 7 bales of cotton belonging to plaintiff, he received only $435.63, which was properly credited. He further alleges that plaintiff owed him $300 for borrowed money due on demand, and, after crediting said $300 with money paid to him by and for plaintiff, that plaintiff still owed him the sum of $357.27; that said $163.59 was properly credited on the $610 note, leaving a balance due him from Smith of $406.41. He pleaded the 2-year statute of limitation in bar of plaintiff's action, and prayed for judgment over for the amount due him. By supplemental petition, plaintiff interposed the statute of limitation of 2 and 4 years for the various items claimed by Whitehead in his cross-action.

In response to special issues, the jury found: (1) That the $1,000 note which plaintiff, Wicker, had given to Whitehead was overpaid by applying to it as credits, the proceeds from the sale of the Smith feed crop by payments made by Wicker prior to the sale of the cotton, together with the proceeds of the 7 bales of cotton belonging to plaintiff which Whitehead had sold and appropriated; (2) that said items had overpaid the note $110.14; (3) that the proceeds of the 11 bales of cotton should be accounted for by Whitehead to Wicker less the rents; (4) that plaintiff Wicker did not agree that Whitehead's said note for $610, executed by Smith, should be paid out of the proceeds of the mortgaged crops prior to the payment of the $1,250 note; (5) that no rents should be deducted from the $245.38 paid to Whitehead by Smith as the proceeds of the sale of the said crops; (6) that Whitehead should not be credited for the expenses of picking, ginning, and hauling the 7 bales of cotton. Based upon this verdict, the court rendered judgment for plaintiff, and decreed that the appellant take nothing on his cross-action.

The contention under appellant's first proposition is that, because plaintiff alleges certain amounts to have been paid which resulted in an overpayment of the principal note, said amounts being credited on the wrong note, and that the proceeds of the sale of cotton stored in the warehouse have been converted, the cause of action is barred by the 2-year statute of limitation. In our opinion, this contention is not sound. It is alleged that Whitehead sold the cotton on May 4, 1922, and the record shows that suit was instituted October 19, 1923; therefore, less than 18 months had intervened.

[1-3] Plaintiff's suit cannot be properly construed as a suit for damages for conversion. While Wicker is nominally the plaintiff in the suit, the gist of his action is the cancellation of his obligation to defendant Whitehead evidenced by his note for $1,000 and the redemption of the collateral note for $1,250 pledged as security. Incidentally he pleads payment of the original note when the proceeds of the property sold is properly applied, and prays for an accounting. The general rule is that statutes of limitation are not applicable to strict defenses, and the doctrine is announced in Texas that such statutes do not apply to pleas of payment. Beardsley v. Hall, 9 Tex. 119; Williams v. Bradbury, 9 Tex. 487. And this is true whether the payments have been made with money, personal property, or services of the payor. Baird v. Ratcliff, 10 Tex. 81; Konz v. Pratt (Tex. Civ. App.) 249 S. W. 258. Although he pleads payment as plaintiff, it is, nevertheless, a strict defense in bar of any right of Whitehead to recover upon the principal note; and, if established in a sum sufficient to extinguish that note, his right of redemption is complete. Payment being a pure defense, the statutes of limitation cannot be set up

by the holder of the principal note. Ware v. Bennett, 18 Tex. 794; Beirne & Burnside v. Kelsey, 21 Tex. 190; 37 C. J. 804. When payments have been made which the creditor has not applied, or has misapplied, equity will require that they be properly credited and as of the date of their payment. Knoohuizen v. Nicholl (Tex. Civ. App.) 257 S. W. 972.

[4] The prayer for an accounting is incidental to the main cause of action. This suit being filed within less than 18 months after Whitehead had sold the cotton pledged to him, the suit was not barred as to that right, since the 4-year statute applies. R. S. 1925, art. 5529; Stewart v. Robbins, 65 S. W. 899, 27 Tex. Civ. App. 188, 1 C. J. 628, 629. Moreover, there are no facts shown which would limit Wicker's right to recover the pledged note, if, in fact, his principal note had been discharged. Cavitt v. Gulledge (Tex. Civ. App.) 255 S. W. 784; Jones v. Thurmond's Heirs, 5 Tex. 318; 31 Cyc. 861. The pledging of the $1,250 note as collateral security with Whitehead and the delivery of the mortgaged cotton into his warehouse constitute him a trustee of the property and of the funds derived from the sale of the cotton in excess of the amount due on the $1,000 note (Thompson v. Findlater Hardware Co. [Tex. Civ. App.] 156 S. W. 301), and Wicker's action against him as trustee is governed by the 4-year statute because he cannot be held to have claimed the cotton adversely until after he had purchased it less than 18 months before the suit was instituted. Kennedy v. Baker, 59 Tex. 150; Home Investment Co. v. Strange, 195 S. W. 849, 109 Tex. 342.

[5] A comparison of the original with the first amended original petition shows that no new cause of action was set up by the latter. Some corrections are made in dates and amounts. Another item of payment is added, but the cause of action declared upon in both pleadings, and the relief sought, is identical. Mitchell v. Mann (Tex. Com. App.) 255 S. W. 980; Cotter v. Parks, 16 S. W. 307, 80 Tex. 539; Freeport Town Site Co. v. Hudgins & Sons (Tex. Civ. App.) 212 S. W. 287; Tribby v. Wokee, 11 S. W. 1089, 74 Tex. 142; W. T. Rawleigh v. Lemon (Tex. Civ. App.) 276 S. W. 1115.

[6, 7] By his third and fifth propositions the appellant contends that because the 11 bales of Smith's cotton were sold upon the demand of the landlord, Sears, and purchased by appellant, that he took it clear of all liens, in the absence of any showing that the sale was not fairly made, and that because the tenant had abandoned the crop the appellant, as the mortgagee, with the tenant's consent, could harvest and prepare it for market and reimburse himself for any money expended in doing so, and that the court's judgment refusing to allow him credit for said amount is erroneous. So far as we are able to determine from the record, the judgment in appellant's favor against Smith for $196.96 represents these expenses. The mortgage which Smith gave to Wicker authorized the mortgagee to take possession of the property and sell it, and apply the proceeds to the satisfaction of the mortgage debt whenever the mortgagee should deem himself insecure. When Smith's note and mortgage were conveyed to Whitehead, the latter acquired all rights under the mortgage. Primarily the duty rested upon Smith to pick and gin the cotton at his own expense. When he failed to do so, and Whitehead performed that duty, Smith alone was responsible to him for the expenses. No reason is shown why Whitehead would be entitled to recover for any such expenses against Wicker. The landlord was not a party to this suit, nor was his lien in any way involved in the controversy; in fact, it does not appear that anything connected with the 11 bales of Smith's cotton is a material inquiry in this appeal. The jury found that Wicker's $1,000 note had been overpaid by the proceeds from the sale of Smith's feed crop, and of Smith's 7 bales of cotton, together with other cash payments made by Wicker. So any contention with reference to the 11 bales of cotton is immaterial. If in gathering the cotton and having it ginned Whitehead suffered a loss, the amount could not be set off against the claim of Wicker, because the expenses were incurred in the fall of 1920, and his counterclaim for said amounts was not pleaded until 1925. This was an item for which he might have recovered against Smith as soon as the expenditures were made, and was therefore barred by limitation, even as against Smith. Nelson v. San Antonio Traction Co., 175 S. W. 434, 107 Tex. 180.

[8] By the fourth proposition it is insisted that because the uncontradicted evidence showed that the landlord, Sears, was entitled to one-third of the proceeds of the feed crop raised by Smith, said amount should have been deducted before the proceeds were applied as a credit upon appellee's note. The jury found that these rents were not to be deducted, and there is evidence to sustain the finding. Wicker testified that Sears' rent from the feed crop was left in the form of feed stacked in the field, and there is other testimony tending to support the finding.

We think a proper judgment has been entered in the case, and, finding no reversible error in the record, the judgment is affirmed.